**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRILOGY FEDERAL, LLC )<br>1100 Wilson Blvd., Suite 1100 )<br>Arlington, Virginia 22209 )<br> )<br>  Plaintiff, )<br> )<br> v. )<br> )<br>GENERAL DYNAMICS INFORMATION )<br>TECHNOLOGY, INC. )<br>3150 Fairview Park Drive )<br>Falls Church, Virginia 22042-4504 )<br> )<br>  Defendant. )<br> ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff Trilogy Federal, LLC ("Trilogy") files this Complaint against Defendant General Dynamics Information Technology, Inc. ("GDIT"), alleging in support thereof as follows:

## NATURE OF THE ACTION

1.     Plaintiff Trilogy is a Service-Disabled Veteran-Owned Small Business ("SDVOSB"), and one of the federal government's leading contractors for modernization and transformation of U.S. agencies' financial management systems. From 2016 until mid-2021, Trilogy served as subcontractor to prime contractor SRA International, Inc. ("SRA") on a five-year contract with the United States Department of Veterans Affairs (the "VA") (the "2016 VA Contract"). Trilogy was responsible for implementing and maintaining the VA's Financial Management System ("FMS") and its Management Information Exchange ("MinX") system. During the duration of the 2016 VA Contract, Trilogy's personnel exclusively performed the services the contract required, and the VA repeatedly expressed its satisfaction with Trilogy's

1

performance.

2.      By the time the follow-on contract for VA's FMS and MinX systems work came up for bid in 2021, Defendant GDIT had acquired SRA, and with it, obtained possession of the successful 2016 bid proposal that Trilogy had prepared in winning the award of the 2016 Contract. Rather than competing for the follow-on contract (the "2021 VA Contract") with Trilogy, Defendant GDIT chose to join with a new prime contractor, CivitasDX (an unpopulated joint venture among Science Applications Intelligence Corporation ("SAIC"), Halfaker and Associates, LLC ("Halfaker"), Cognitive Medical Systems, Inc. ("Cognitive Medical"), and teaming partner, Client First Technologies, Inc. ("Client First") (collectively, the "CivitasDX Team"). Trilogy, on the other hand, decided to compete for the 2021 VA Contract with a new prime contractor, B3 Group, and other teaming partners.

3.      The two teams submitted separate bids for the 2021 VA Contract. Defendant GDIT had access to Trilogy's highly confidential know-how and prior 2016 proposal through Trilogy's former teaming partner, SRA, which Defendant GDIT previously had acquired. Upon information and belief, Defendant GDIT also had access to Trilogy's proprietary trade secret information through Kila Thomas ("Thomas"), Trilogy's former Director of Business Development, who left the company to join Client First, one of the members of the CivitasDX Team, several months before the competition for the 2021 VA Contract.

4.      The CivitasDX Team lacked expertise in the VA's FMS and MinX software systems and, rather than lose the contract to Trilogy, it and its teaming partners (including Defendant GDIT) decided to wrongfully misappropriate Trilogy's trade secret and confidential business information to prepare its own competing bid.

5.      At the time the 2021 VA Contract was put up for bid, it was understood in the IT consulting industry that Trilogy's expertise and past performance for the VA meant that a competing bidder was highly unlikely to be successful without Trilogy on its team. Trilogy was therefore surprised to learn in September 2021, that the VA had awarded the 2021 VA Contract to CivitasDX.

6.      In 2021, no member of the CivitasDX Team, including Defendant GDIT, possessed sufficient technical knowledge of the VA's systems or the experience necessary to prepare a bid proposal sufficient to satisfy the VA's technical standards or to compete with Trilogy. Thus, the CivitasDX Team succeeded in winning the 2021 VA Contract only because it had prepared a proposal using confidential trade secret information that had been improperly taken from Trilogy.

7.      Fully aware that the CivitasDX Team lacked the technical knowledge to perform the 2021 VA Contract, former Trilogy employee, Thomas, and representatives from CivitasDX, SAIC, Halfaker, and Defendant GDIT, repeatedly solicited Trilogy's employees to join CivitasDX—before, during and after the bidding process for the 2021 VA Contract. The Trilogy employees declined and the CivitasDX Team found itself incapable of performing the 2021 VA Contract that had been awarded to CivitasDX.

8.      It was therefore no surprise that the CivitasDX Team struggled to perform the 2021 VA Contract. The VA soon realized that it was necessary to extend GDIT/Trilogy's 2016 VA Contract for a short period, in hopes of easing the transition to a new contractor that was sorely unprepared and lacked technical knowledge. The CivitasDX Team's performance over the next few years was plagued with difficulties—which upon information and belief caused the VA to notify CivitasDX in writing about various areas of deficiency.

9.     The VA's dissatisfaction with CivitasDX's performance culminated with its issuance of a supplemental Request for Information ("RFI") for FMS support services in April 2024 and subsequent Request for Proposals ("RFP") in August 2024 – despite the scheduled expiration of the 2021 VA Contract in March 2025. The VA's supplemental request for bids is further evidence of the CivitasDX Team's poor performance and the VA's dire need for assistance. As part of the VA's issuance of the April 2024 RFI, the VA acknowledged that CivitasDX had been "unable to consistently meet [the] service requirements" and that it was "incumbent upon [the VA] to repair this issue and get these services in place now."

10.    The CivitasDX Team's inadequate performance of the 2021 VA Contract was to be expected, however, since CivitasDX's 2021 proposal was prepared using confidential, trade secret information that had been misappropriated from Trilogy, rather than based on its own skill and expertise.

11.    Trilogy brings this action against Defendant GDIT for its wilful misuse of Trilogy's proprietary, confidential trade secret information. It seeks in this case monetary relief, including compensatory damages, disgorgement, punitive damages, attorneys' fees and costs, and any other relief the Court deems necessary to remedy and rectify Defendant GDIT's wrongful conduct.

## PARTIES

12.    Plaintiff Trilogy Federal, LLC is a management and IT consulting firm that specializes in implementing and maintaining federal financial management systems. Trilogy is a limited liability company formed under the laws of the Commonwealth of Virginia and headquartered at 1100 Wilson Blvd., Suite 1100, Arlington, Virginia 22209.  Defendant GDIT is a Virginia corporation with its principal place of business at 3150 Fairview Park Dr, Falls Church, Virginia, 22042-4504. GDIT is a subcontractor to CivitasDX on the 2021 VA Contract.

4

## RELEVANT NON-PARTIES

13.     Non-party CivitasDX is a competitor of Trilogy and is a limited liability company formed under the laws of the State of California with its principal place of business in California. Upon information and belief, CivitasDX is an unpopulated joint venture with no employees of its own and whose members are Cognitive Medical and Halfaker (now SAIC). CivitasDX is the prime contractor on the 2021 VA Contract.

14.     Non-party SAIC is a Delaware corporation with its principal place of business in Virginia. On July 2, 2021, SAIC completed its acquisition of Halfaker, a member of joint venture, CivitasDX.

15.     Non-party Cognitive Medical is a Delaware corporation with its principal place of business in California. It is a member of joint venture, CivitasDX.

16.     Non-party Halfaker is a limited liability company whose sole member is SAIC. SAIC acquired Halfaker in July 2021. SAIC is a Delaware corporation with its principal place of business in Virginia. Halfaker is a member of CivitasDX.

17.     Non-party Client First is a Virginia corporation with its principal place of business in Virginia. Client First is a subcontractor on the 2021 VA Contract. It hired Kila Thomas after she left Trilogy in or about March 2021.

18.     Non-party Kila Thomas is a resident of Fairfax, Virginia.  From November 2017 to March 2021, Thomas was Trilogy's Director of Business Development. In March 2021, unhappy with Trilogy's decision not to promote her, Thomas left Trilogy to work for its competitor, Client First.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action involving federal questions related to claims for, among other things, trade secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq*. The Court may exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

21.     This Court has personal jurisdiction over Defendant GDIT because that company has contacts within this jurisdiction sufficient to subject it to personal jurisdiction here including, but not limited to, the acts giving rise to this action.

## FACTUAL ALLEGATIONS

### *Trilogy's Business and the 2016 VA Contract*

22.     Trilogy is a management and IT consulting firm which was founded in 2009 with the goal of providing its clients and partners, most of which are veteran-related federal government agencies, with approaches to solve programmatic and technological challenges. Trilogy works to modernize the federal government's existing technology to meet financial management objectives. As an expert and leader in the field, Trilogy currently has more than thirty active government contracts and more than forty partnerships across the federal-civilian space. It is a service-disabled veteran-owned small business that, when selecting contracts for which it will bid, places a special emphasis on serving U.S. veterans.

23.     Prior to the founding of Trilogy, the company's leadership worked for American Management Systems ("AMS") (now CGI Inc.), the vendor that developed the FMS software

utilized by federal agencies. At AMS, Trilogy's leadership developed the unique skillsets that allow it to run and maintain the software that the VA now uses. Notably, because AMS never partnered with vendors to integrate their software with other systems, there are a very limited number of individuals (including Trilogy's leadership team) with the requisite knowledge to operate and support the baseline FMS software. Moreover, because vendor support for FMS was discontinued more than fifteen years ago, expertise in FMS is critical but increasingly scarce. Upon information and belief, no former AMS and/or Trilogy employees with the necessary FMS software capabilities are currently employed by any of the members of the CivitasDX Team, including Defendant GDIT.

24.     As a result of its subject matter expertise and mission, Trilogy, through its prime contractor partner, SRA (now a part of Defendant GDIT), won the 2016 VA Contract after successfully bidding in response to RTEP T4-0838, FMS Production, Annual Close and Audit Support, a Request for Task Execution Plan issued by the VA, Office of Information & Technology, in conjunction with the Office of Financial Business Operations. This service contract called for the sustainment and modernization of the FMS and MinX financial systems that serve as the VA's accounting system of record.

25.     Trilogy was not eligible to bid on the 2016 VA Contract as a prime contractor and, thus, was formally listed as the subcontractor to its teaming partner, prime contractor SRA, a wholly owned subsidiary of CSRA, Inc. (acquired by General Dynamics in April 2018, which thereafter became the parent company of Defendant GDIT). Despite its subcontractor status, however, it was Trilogy that exclusively prepared the technical proposal that ultimately led to the award of the 2016 VA Contract. SRA had no role in the drafting of the 2016 proposal and joined the Trilogy team only days before the winning bid was submitted. SRA understood that the

technical information and details provided by Trilogy in the 2016 proposal constituted Trilogy's highly confidential and proprietary trade secrets, and SRA was obligated to keep that information confidential.

26.     Over the life of the 2016 VA contract, Trilogy performed all of the required work, and it had sole responsibility for managing the VA's FMS and MinX systems. Throughout the performance of the contract, Trilogy consistently received positive feedback from the VA.

27.     The 2016 VA Contract was set to expire on July 31, 2021; however, the VA extended Trilogy's contract to November 30, 2021, primarily due to delays in issuing a request for proposals for the next contract for the FMS and MinX support work. In August 2021, the VA issued a new Performance Work Statement ("PWS") for Transformation Twenty-One Total Technology Next-Generation ("T4NG") Request for Task Execution Plan ("RTEP") 0580 for Consolidated Corporate Support Services to continue the FMS and MinX work. Considering the positive feedback that it had received from 2016 to mid-2021, Trilogy began preparing its bid to continue work on the follow-on 2021 VA Contract.

28.     Because Defendant GDIT was not eligible to act as the prime contractor for the 2021 VA Contract, Trilogy identified a new company, B3 Group, to serve in that capacity. Trilogy, Defendant GDIT, and B3 then agreed to work together to bid for the 2021 VA Contract.

29.     To Trilogy's surprise, and possibly because of dissatisfaction with its proposed designated work share, Defendant GDIT disregarded the prior arrangement and decided instead to team with CivitasDX and Client First. Recognizing that the CivitasDX Team lacked the necessary expertise to perform the contract, Defendant GDIT attempted to persuade Trilogy to abandon B3 Group and join the CivitasDX Team. Trilogy declined the overture.

8

30.     On August 26, 2021, Trilogy, with B3 Group and several other subcontractors, submitted its proposal for the 2021 VA Contract. At the time, it was well understood within the IT consulting industry that a bidder very likely would only be successful if it had Trilogy, the highly experienced incumbent service provider, on its team. Trilogy's personnel had decades of experience with the legacy FMS used by the VA, as well as a deep understanding of, and direct involvement in, various customizations and enhancements to the VA's FMS implemented over the years. Thus, Trilogy was uniquely positioned to design a proposal in 2021 that would meet the VA's needs.

31.     On September 29, 2021, however, the VA notified Trilogy that it had awarded the 2021 VA Contract to CivitasDX and the CivitasDX Team. The award came as a surprise to Trilogy (and the industry as a whole), since the CivitasDX Team lacked the technical expertise required to perform the contract.  As a result, Trilogy came to the realization that the CivitasDX proposal must have relied on the improper use of Trilogy's highly confidential trade secrets. Trilogy's beliefs were later confirmed by the CivitasDX Team's subsequent poor performance on the project and the VA's requests to Trilogy for additional resources and assistance.

32.     It would not have been possible for the CivitasDX Team to prepare a bid proposal sufficiently responsive to the technical requirements of the solicitation with any level of sophistication or detail without access to Trilogy's 2016 proposal. In fact, sources within the local government contracting industry confirmed that by informing Trilogy's leadership that the CivitasDX Team, including Defendant GDIT, prepared CivitasDX's bid using information taken from a copy of Trilogy's 2016 proposal.

33.     Trilogy suffered extensive harm as a result of its loss of the 2021 VA Contract to CivitasDX. While the FMS and MinX work that Trilogy would have performed made up a

relatively modest portion of the overall work required by the 2021 VA Contract, the FMS and MinX work was the VA's first and highest priority. Thus, the success of the bid was directly and disproportionately tied to those aspects of the proposal that related to FMS and MinX. Given that importance, Trilogy and its 2021 teaming partners agreed that it would receive a share of the contract revenue that was meaningfully greater than the revenue earned for the FMS and MinX work alone.  Further, the teaming agreement entered in between B3 Group and Trilogy provided that, if the bid was successful, Trilogy would be given future bidding opportunities and staffing on B3 Group's existing projects.

*Trilogy's Confidential Information and Trade Secrets*

34.     As described above, Trilogy was founded by former managers of AMS, the well-respected government contracting firm that developed the FMS used by the VA. Each of Trilogy's founders has years of experience developing, implementing and supporting the legacy FMS software package and processes used by the VA.

35.     In addition to their decades of experience with FMS generally, Trilogy's professional staff members have worked to support the VA FMS since the original implementation of the system in 1996, and they also served as the core FMS Service support team from 2000 through 2009. Historically, Trilogy staff supported not only the original implementation of FMS at the VA, but also a number of initiatives, customizations and enhancements to the FMS and MinX system over the years.

36.     To effectively conduct its business and compete in the marketplace, Trilogy relies upon the know-how and expertise it has developed over many years. Trilogy harnesses this expertise by developing comprehensive, compelling proposals in response to each federal contracting bid it submits, including the proposals it submitted for the 2016 and 2021 VA

Contracts. These proposals contained highly valuable confidential and proprietary information about Trilogy's business and comprise the company's trade secrets (the "Trade Secret Information").

37.     Trilogy has developed its highly confidential strategies and procedures for IT system management over its many years of experience supporting federal clients in IT system modernization, including its staff's decades of experience with FMS and MinX. This expertise is reflected in the Trade Secret Information included in Trilogy's contracting proposals.

38.     The Trade Secret Information in Trilogy's proposal for the 2016 VA Contract includes the identification of anticipated challenges and issues with the FMS and MinX software, as well as strategies for overcoming and addressing those issues and ensuring the smooth operation of the VA's financial management system. The Trade Secret Information also reflected technical assessments of the systems, strategies for software configurations and designs, and recommended operational strategies to satisfy the VA's service requirements. Trilogy shared its Trade Secret Information with Defendant GDIT's predecessor, SRA, which teamed with Trilogy on the proposal 2016 proposal.

39.     Trilogy's 2016 proposal contained a variety of Trade Secret Information that Trilogy developed through its substantial experience supporting the VA's FMS and MinX systems. For example, the 2016 proposal included:

(a)     Descriptions of specific deliverables that Trilogy would provide, such as coding and software enhancements;

(b)     Insight into the challenges that arise when changes are made to operating procedures, and strategies for addressing those challenges;

(c)   Descriptions of potential problems that can arise with external system interfaces and a proposed approach to solving those problems;

(d)   Descriptions of Trilogy's knowledge regarding the limitations of the legacy technical environment and suggested steps that must be taken to maintain data standards;

(e)   Descriptions of concerns previously identified by the VA's external auditors and a proposed methodology for remediating those concerns;

(f)   Detailed multi-step strategy to manage and prioritize day-to-day technical issues;

(g)   Descriptions of historic deliverables previously provided by Trilogy, including coding enhancements and fixes, and a proposed strategy for maximizing the benefits of this prior work;

(h)   Identification of specific daily functions to be managed to mitigate the risk of software down-time;

(i)   Descriptions of specific support strategies for each task area identified in the VA's request for proposals;

(j)   Description of specific steps to be taken to support interface development;

(k)   Details regarding Trilogy's strategy for ensuring the proper configuration of FMS tables;

(l)   Recommendations with respect to certain data management practices;

(m)   Description of Trilogy's intended strategic approach to batch processing;

(n)   Details regarding Trilogy's four-phase strategy for Annual Close support, including task details and strategies for each phase; and

(o)   Numerous cost-avoidance strategies.

40.     Trilogy submitted its 2016 proposal to the VA on a confidential basis. Trilogy's government contract proposals are not made available to the public, and the company has gone to great lengths to protect its Trade Secret Information by, among other things:

(a)     Implementing confidentiality agreements with third parties, which describe Trilogy's Trade Secret Information and impose non-disclosure obligations;

(b)     Implementing policies for employees on the importance of maintaining the confidentiality of Trilogy's Trade Secret Information;

(c)     Disclosing Trilogy's Trade Secret Information to only those persons who need to know such information to perform their work for Trilogy;

(d)     Maintaining Trilogy's Trade Secret Information on password-protected computer systems that restrict access to Trilogy's information only to Trilogy employees and to only those files which access is necessary for the employee;

(e)     Immediately following an employee's termination, requiring the return of all Trilogy-owned property, including access to all Trade Secret Information, and suspending that employee's Trilogy accounts; and

(f)     Investigating and taking prompt action whenever Trilogy learns that someone is wrongly using Trilogy's Trade Secret Information, to attempt to stop such use.

41.     Trilogy shares its Trade Secret Information with its third-party business partners solely on a need-to-know, business-related basis, and pursuant to strict obligations of confidentiality. When the sharing of Trade Secret Information is required, Trilogy shares only the information necessary for it to collaborate with its business partners to fully address a federal agency's needs.

42.     This Trade Secret Information affords Trilogy a competitive advantage over other companies that provide similar services to the federal government and derives independent economic value from not being publicly known. Trilogy and its staff have invested more than fifteen years and significant resources to develop its Trade Secret Information in relation to the VA's FMS modernization and support.

### *Defendant GDIT and Thomas Misappropriate Trilogy's Trade Secrets*

43.     In 2021, as described above, GDIT abruptly backed out of its agreement to join B3 Group and Trilogy to bid for the 2021 VA Contract and, instead, teamed with Trilogy's competitor, Client First, and the rest of the CivitasDX Team.

44.     Also in March 2021, as the 2016 VA Contract was reaching its expiration, Thomas abruptly left her job as Trilogy's Director of Business Development, angered because Trilogy had not given her a promotion. She accepted a position at Client First, a start-up SDVOSB IT contractor and then soon-to-be subcontractor to CivitasDX.

45.     As Director of Business Development, Thomas did not work in a technical capacity at Trilogy and did not develop any technical know-how or expertise that she would have been able to impart upon her new employer. Instead, Thomas served in a non-technical business-generation role. In that role, she had access to Trilogy's government contract bids and proposals, including the 2016 VA Contract proposal and the Trade Secret Information it contained.

46.     Thus, both Defendant GDIT and Thomas/Client First had access to Trilogy's highly valuable Trade Secret Information at the time that the CivitasDX Team was preparing its bid for the 2021 VA Contract. Upon information and belief, Defendant GDIT and Thomas shared with the CivitasDX Team a copy of, or details from, Trilogy's winning proposal for the 2016 VA

Contract and other highly confidential information concerning Trilogy's performance on that project.

47.     Upon information and belief, Defendant GDIT and the other members of the CivitasDX Team knew that this information was highly confidential, and that Trilogy was the source of the information. They nevertheless used Trilogy's proprietary information to prepare CivitasDX's proposal and compete against Trilogy and the B3 Group team for the award of the 2021 VA Contract.

48.     Because the CivitasDX Team, including Defendant GDIT, lacked experience with the VA's FMS and MinX systems and had no employees with experience providing the services required by the 2021 VA Contract, it could not have prepared a successful bid for the contract without using the highly confidential Trade Secret Information contained in Trilogy's 2016 proposal.

49.     Defendant GDIT's disclosure of Trilogy's proposal violated its confidentiality obligations to Trilogy and was done without Trilogy's authorization. Likewise, Thomas's disclosure of Trilogy's proposal to the CivitasDX Team violated the policies governing her employment with Trilogy, including those found in Trilogy's Employment Handbook, which all Trilogy employees are required to review and to follow.

50.     The CivitasDX Team, including Defendant GDIT, was fully aware of both GDIT's and Thomas's confidentiality obligations to Trilogy. Such confidentiality requirements are common in the government contracting industry. Additionally, they knew about the highly confidential nature of federal procurement bids and proposals.

***Solicitation of Trilogy's Employees***

51.     The CivitasDX Team, including Defendant GDIT, lacked the knowledge and experience necessary to perform the 2021 VA Contract. Additionally, because the VA's FMS operates on a customized software that differs from that of other federal agencies (and thus knowledge of other agencies' systems is not transferrable), the CivitasDX Team needed the assistance of Trilogy employees, as they were some of the only individuals that understood the VA's system.

52.     Thus, even before CivitasDX submitted its bid for the 2021 VA Contract, individuals associated with the CivitasDX Team, including John Madden (a Program Manager of Defendant GDIT), Eileen Salle (a Senior Software Engineer from SAIC), Tony Vallin (a Program Management Director from Halfaker), and Bryan Lima (a Senior Recruiter from SAIC), sought to lure away Trilogy employees to assist in the preparation of CivitasDX's bid and the performance of the 2021 VA Contract, if awarded.

53.     Trilogy employees refused these solicitations, which began in April 2021 and continued through at least early 2022.

54.     Several of the solicitations sent to Trilogy employees after CivitasDX was awarded the 2021 VA Contract came from the employees of the CivitasDX Team members, including Defendant GDIT, using "VA.org" email addresses or through the VA's Microsoft Teams system. This is in violation of the VA's Technology Acquisition Center's "Use of VA Resources" Policy, which prohibits the use of VA resources for recruiting and solicitation purposes. Accordingly, on November 5 and November 19, 2021, Trilogy's leadership contacted the VA to request that it ask its new contractor to cease its solicitations of Trilogy employees, particularly through the use of VA resources.

*The CivitasDX Team's Unsatisfactory*
*Performance of the 2021 VA Contract*

55.     After awarding the 2021 VA Contract, the VA soon realized that the CivitasDX Team was ill-equipped to take over the work from Trilogy. Thus, the VA sought to further extend the GDIT/Trilogy 2016 VA Contract through December 31, 2021, in hopes that the incumbent Trilogy could assist with the transition to a new vendor. Trilogy declined to provide FMS support during this additional one-month extension because its personnel were needed for other projects, although it did continue to provide a small amount of MinX support.

56.     Without Trilogy's help, the CivitasDX Team lacked the expertise needed to successfully perform. Thus, John Madden of Defendant GDIT sought Trilogy's participation as a subcontractor on the 2021 VA Contract. Doug Burke, the President and co-founder of both Cognitive Medical and CivitasDX, subsequently offered a subcontract to Trilogy for the engagement of one, half-time Trilogy subject matter expert. Trilogy declined both proposals.

57.     Upon information and belief, the CivitasDX Team, including Defendant GDIT, has been unable to satisfactorily perform the 2021 VA Contract and, when asked by the VA why they did not have personnel familiar with the system, the CivitasDX Team admitted that they had intended to hire Trilogy's employees to execute the work.

58.     Upon information and belief, the VA notified CivitasDX in writing of various areas of deficiency in its performance of the 2021 VA Contract. In 2022, hoping to find the support it could not get from CivitasDX, the VA engaged a small Trilogy team to assist with FMS management. As recently as the summer of 2024, the VA has called on Trilogy to assist with its Annual Close, which CivitasDX and its teaming partners have been unable to perform successfully.

59.     The 2021 VA Contract is set to expire in March 2025; however, one year earlier on April 16, 2024, the VA, at the insistence of its Office of Finance, issued an RFI for Financial Data Reconciliation Support Services (RFI Request: VA-24-00065607; Solicitation Number: 36C10B24Q0337) and a PWS for these support services. The RFI included options that, if exercised, could cover all the tasks included in the 2021 VA Contract—thus reflecting the VA's recognition that it had to look beyond the CivitasDX Team for FMS and MinX support.

60.     In response to Trilogy's question regarding the VA's rationale for this supplemental RFI, the VA made it clear that there was an urgent need to address the CivitasDX Team's failure of performance. The VA responded in the RFI Questions and Answers for VA-24-00065607 published on April 24, 2024, that "[i]n Sep 2021, instead of awarding a separate support services contract, there was an attempt to get the sustainment Vendor to provide the required application services.  They were unable to consistently meet those service requirements. It is incumbent upon us to repair this issue and gets these services in-place now."

61.     On August 8, 2024, the VA issued an RFP in follow up to the April 2024 RFI. Responses to that RFP were due on August 22, 2024.

62.     The CivitasDX Team's inability to perform the services required by the 2021 VA Contract, as demonstrated by the VA's continued reliance on the Trilogy team, the VA's 2024 RFI and RFP, and the solicitation of Trilogy employees, is further evidence that their 2021 winning proposal was the product of their wrongful misappropriation of Trilogy's Trade Secret Information.

## CLAIMS FOR RELIEF

### COUNT I
**(Federal Misappropriation of Trade Secrets:**
**Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.)**

63.    Trilogy incorporates Paragraphs 1 through 62 into this Count by reference.

64.    The actions of Defendant GDIT, as set forth herein, constitute trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*

65.    Trilogy is the owner of certain confidential and proprietary information, including the Trade Secret Information, which are trade secrets within the meaning of 18 U.S.C. § 1839. This includes, but is not limited to, information contained in Trilogy's proposal for the 2016 VA Contract, as described in paragraphs 38 – 40 above.

66.    Trilogy's Trade Secret Information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person.

67.    At all relevant times, Trilogy has taken reasonable measures to maintain the secrecy and confidentiality of this information, including the measures set forth herein.

68.    Defendant GDIT acquired Trilogy's Trade Secret Information from GDIT's predecessor, SRA, and knew or had reason to know that the other members of the CivitasDX Team had no right or entitlement to have access to that information. GDIT acquired Trilogy's Trade Secret Information under circumstances giving rise to a duty to maintain the secrecy of those trade secrets or limit the use of those trade secrets. GDIT also owed a duty to Trilogy to maintain the secrecy of the Trade Secret Information or limit the use of those trade secrets.

69.    In violation of those duties, Defendant GDIT used Trilogy's Trade Secret Information to improperly gain a competitive advantage by sharing the Trade Secret Information

with members of the CivitasDX Team. Additionally, in further violation of those duties, Defendant GDIT improperly included, or causing to be included, the Trade Secret Information in the CivitasDX Team's proposal for the 2021 VA Contract.

70.     Additionally, or in the alternative, Defendant GDIT acquired Trilogy's Trade Secret Information with knowledge or reason to know that the Trade Secret Information had been acquired by improper means.

71.     Specifically, Defendant GDIT and the other CivitasDX Team members, at the time of their wrongful use of Trilogy's Trade Secret Information, knew or had reason to know that Thomas was a source of Trilogy's trade secrets, and that she had used improper means to acquire the Trade Secret Information, and/or had a duty to maintain the confidentiality of the Trade Secret Information she had access to by virtue of her employment with Trilogy.

72.     Thomas acquired Trilogy's Trade Secret Information under circumstances giving rise to a duty to maintain the secrecy of those trade secrets and/or owed a duty to maintain the secrecy of the trade secrets.

73.     At the time of its acquisition and use of Trilogy's Trade Secret Information, Defendant GDIT knew that neither it nor Thomas had Trilogy's express or implied consent to disclose the information.

74.     As a direct and proximate cause of the wrongful conduct by Defendant GDIT, Trilogy has suffered direct and consequential damages and is entitled to compensatory damages under 18 U.S.C. § 1836, including enhanced damages in an amount to be proven at trial.

75.     Additionally, Defendant GDIT has been unjustly enriched as a result of its misappropriation of Trilogy's protected trade secrets.

76.     Further, Defendant GDIT's conduct constitutes knowing, wilful, and malicious misappropriation, and thus Trilogy is entitled to an award of punitive damages and attorneys' fees.

### COUNT II
**(Misappropriation of Trade Secrets Under**
**District of Columbia Law)**

77.     Trilogy incorporates Paragraphs 1 through 76 into this Count by reference.

78.     The actions of Defendant GDIT constitute trade secret misappropriation under the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36- 401, *et seq.,* or other applicable District of Columbia law.

79.     Trilogy is the owner of certain confidential and proprietary information, including the Trade Secret Information identified herein, which information constitutes trade secrets within the meaning of D.C. Code § 36-401(4).  This includes, but is not limited to, information contained in Trilogy's 2016 Proposal to the VA, as described in paragraphs 38 – 40 above.

80.     Trilogy's Trade Secret Information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person.

81.     At all relevant times, Trilogy has taken reasonable measures to maintain the secrecy and confidentiality of this Trade Secret Information, including the measures set forth herein.

82.     Defendant GDIT acquired Trilogy's Trade Secret Information from its predecessor, SRA, and knew or had reason to know that the other members of the CivitasDX Team had no right or entitlement to that information. Defendant GDIT acquired Trilogy's Trade Secret Information under circumstances giving rise to a duty to maintain the secrecy of those trade secrets or limit the use of those trade secrets. Defendant GDIT also owed a duty to Trilogy to maintain the secrecy of the Trade Secret Information or limit the use of those trade secrets.

21

83.    In violation of those duties, Defendant GDIT used Trilogy's Trade Secret Information to improperly gain a competitive advantage by sharing the Trade Secret Information with members of the CivitasDX Team. Additionally, in further violation of those duties, Defendant GDIT improperly included, or causing to be included, the Trade Secret Information in the CivitasDX Team's proposal for the 2021 VA Contract.

84.    Additionally, or in the alternative, Defendant GDIT acquired Trilogy's Trade Secret Information with knowledge or reason to know that the Trade Secret Information had been obtained by improper means.

85.    Specifically, Defendant GDIT and the other CivitasDX Team, at the time of their wrongful use of Trilogy's Trade Secret Information, knew or had reason to know that the source of Trilogy's trade secrets was Thomas, and that Thomas had used improper means to acquire the Trade Secret Information, and/or that she had a duty to maintain the confidentiality of the Trade Secret Information that she had access to by virtue of her employment with Trilogy.

86.    Thomas acquired Trilogy's trade secrets under circumstances that gave rise to a duty to maintain the secrecy of those trade secrets and/or owed a duty to maintain the secrecy of the trade secrets.

87.    At the time of its acquisition and use of Trilogy's Trade Secret Information, Defendant GDIT knew that neither it nor Thomas had Trilogy's express or implied consent to disclose the information.

88.    As a direct and proximate cause of the wrongful conduct by Defendant GDIT, Trilogy has suffered direct and consequential damages and is entitled to recover compensatory damages under D.C. Code § 36-404 or other applicable state law, including enhanced damages in an amount to be proven at trial.

89.     Additionally, Defendant GDIT has been unjustly enriched as a result of its misappropriation of Trilogy's protected trade secrets. Further, GDIT's conduct constitutes knowing, wilful, and malicious misappropriation, and thus Trilogy is entitled to an award of punitive damages and attorneys' fees.

<u>**COUNT III**</u>
**(Tortious Interference with Prospective Business Relationship)**

90.     Trilogy incorporates Paragraphs 1 through 89 into this Count by reference.

91.     Trilogy has a protectable interest and valid expectancy in maintaining its business relationship with the VA, which has been cultivated, obtained, and maintained through the investment of substantial time, effort, and expense.

92.     Trilogy and the VA had a pre-existing business relationship that began with the VA's engagement of Trilogy in 2016 and resulted in a positive relationship between the two parties.

93.     Defendant GDIT had knowledge of Trilogy's relationship with the VA.

94.     Defendant GDIT wilfully, knowingly, and without privilege, justification, or excuse, tortiously interfered with Trilogy's customer relationship by using improper means, which included impairing and appropriating Trilogy's business with the VA; improperly soliciting employees using VA resources; undermining Trilogy's business relationships with the VA by misappropriating Trilogy's trade secrets; and by Defendant GDIT's otherwise unfairly competing with Trilogy.

95.     But for Defendant GDIT tortious interference with Trilogy's prospective business relationship with the VA, it is commercially reasonable to conclude that Trilogy would have been awarded the 2021 VA Contract.  This is evidenced by, among other things, the VA's engagement

of Trilogy in 2022 and the VA's recently issued 2024 RFI and RFP, which was awarded to Trilogy on September 25, 2024.

96.     Defendant GDIT's tortious interference is outside the scope of mere competition and has proximately caused Trilogy damages through its loss of the 2021 VA Contract, including but not limited to the compensation and benefits Trilogy would have received had the 2021 VA Contract been awarded to B3 Group and Trilogy.

97.     Such tortious interference, in disregard of Trilogy's prospective business relationship with the VA, has been deliberate, wilful, and malicious, and of such an aggravated character as to warrant imposition of punitive damages, attorney's fees and costs, in addition to compensatory damages.

## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff requests a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trilogy Federal, LLC respectfully requests that this Court enter judgment in its favor and against Defendant General Dynamics Information Technology, Inc., as follows:

a.   Determine that the acts of the Defendant constitute misappropriation of Trilogy's trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*, and District of Columbia law or other applicable state law;

b.   Determine that the  actions of the Defendant constitute  tortious  interference with  Trilogy's prospective business relationship with the VA;

c.   Award Trilogy compensatory damages in an amount to be proven at trial;

d.  Award Trilogy its reasonable costs, including attorneys' fees, incurred in bringing this action;

e.  Award Trilogy pre-judgment interest on all amounts awarded and post-judgment interest until paid, at a lawful rate; and

f.  Award any such other relief as the Court deems just and equitable.

Respectfully submitted,

SECIL LAW PLLC

Dated: September 27, 2024          By:  /s/ *John P. Rowley III*
                                   John P. Rowley III (DC Bar No. 392629)
                                   Lionel Andre (DC Bar No. 422534)
                                   Cory Kirchert (DC Bar No. 90002687)
                                   Adriaen M. Morse Jr. (DC Bar No. 483347)
                                   1701 Pennsylvania Ave., N.W., Suite 200
                                   Washington, D.C. 20006
                                   jrowley@secillaw.com
                                   (202) 642-0679
                                   landre@secillaw.com
                                   (703) 232-4622
                                   ckirchert@secillaw.com
                                   (202) 417-7052
                                   amorse@secillaw.com
                                   (202) 417-8232

                                   *Counsel for Plaintiff Trilogy Federal, LLC*