UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRILOGY FEDERAL, LLC,<br><br>              Plaintiff,<br><br>         v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.,<br><br>              Defendant. | Civil Action No. 24-cv-2772 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Trilogy Federal, LLC ("Trilogy"), a federal government contractor for financial management systems, sued defendant General Dynamics Information Technology, Inc. ("GDIT" or "defendant") for misappropriation of trade secrets and tortious interference with a prospective business relationship. *See* Complaint, ECF No. 1; First Amended Complaint ("Compl."), ECF No. 14. Pending before the Court is defendant's motion to stay the litigation and compel arbitration, Def.'s Mot. to Compel. Arbitration ("Def.'s Mot. for Arb."), ECF No. 12, pursuant to the arbitration clause contained in the contract Trilogy entered as a subcontractor with defendant's predecessor in interest, Def.'s Mem. in Supp. Mot. for Arb. at 3-4 ("Def.'s Mem."), ECF No. 12-1. Over Trilogy's opposition, *see* Pl.'s Opp'n, ECF No. 15, for the reasons explained below, defendant's motion is granted, and this case is stayed pending arbitration.

**I.    BACKGROUND**

Trilogy is a federal government contractor that implemented and maintained financial management systems for the U.S. Department of Veteran Affairs ("VA") pursuant to a five-year contract starting in 2016. Compl. ¶ 1. In performing these services, Trilogy was the subcontractor to defendant's predecessor, SRA International, Inc. ("SRA"), as the prime

1

contractor. *Id.* In 2021 when the VA opened the bidding process for renewal of that contract, both Trilogy and defendant, which had acquired SRA, submitted bids—but this time separately, both as subcontractors with new partners. *Id.* ¶¶ 2-3. Trilogy submitted a proposal with B3 as the prime contractor, while defendant submitted a bid with CivitasDX as a prime contractor and Client First as a co-subcontractor. *Id.* CivitasDX is a joint venture of Cognitive Medical Systems, Inc. ("CMS") and Halfaker and Associates LLC ("Halfaker"), *id.*, which is a subsidiary of Science Applications International Corporation ("SAIC"), *Trilogy v. CivitasDX LLC* ("*Trilogy I*"), 24-cv-2713 (BAH), Defs. SAIC and Halfaker's Mem. in Supp. Mot. to Dismiss at 1, 3, ECF No. 30-1.

Trilogy's proposal lost to the one submitted by CivitasDX and defendant. Compl ¶ 5. According to Trilogy, through a former Trilogy employee, Kila Thomas, who now works for Client First, or through defendant's role in the 2016 bidding process, all of the parties affiliated with the winning bid—*i.e.*, defendant, CivitasDX, CMS, SAIC, Halfaker, Client First, and Thomas—misappropriated Trilogy's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, and the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401, and tortiously interfered with plaintiffs' prospective business relationship with the VA. *Id.* ¶¶ 45-47, 63-97; *Trilogy I*, Complaint ¶¶ 60-87, 105-112, ECF No. 1. Based on this allegation of trade secret misappropriation, Trilogy has sued all six entities and Thomas in two related cases: the instant matter naming GDIT as the sole defendant, and *Trilogy I*, 24-cv-2713 (BAH), naming as defendants five other entities—*i.e.*, CivitasDX, CMS, SAIC, Halfaker, Client First—and the individual Thomas. These two cases were not consolidated due to concerns about a counsel conflict of interest, but both are subject to the same briefing timeline for initial

responses to the complaint. *See Trilogy I*, Pl.'s Response to Show-Cause Order Regarding Consolidation of Cases, ECF No. 26.

In the instant case, defendant moved to compel arbitration on December 6, 2024. Def.'s Mot. for Arb. Shortly thereafter, Trilogy amended its complaint to request injunctive relief in addition to damages, Amended Complaint, ECF No. 14, in an apparent effort to defeat application of the contractual arbitration clause to which Trilogy is bound in its original subcontract with defendant's predecessor in interest.

**II.    LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25; *see also Khan v. Parsons Glob. Servs., Ltd.*, 521 F.3d 421, 424 (D.C. Cir. 2008) ("The Supreme Court has held that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" (alteration in original) (quoting *Moses H. Cone*, 460 U.S. at 24-25)).

Just as parties may agree to arbitration as a method for resolving disputes, they may also agree to having an arbitrator decide the threshold question itself—"whether the parties['] agreement [to arbitrate] covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). That is, "parties may delegate threshold arbitrability questions to the arbitrator, so long as [their] agreement does so by 'clear and unmistakable' evidence." *Id.* at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995));

3

*see also Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1347 (D.C. Cir. 2021) ("Such threshold arbitrability questions are generally presumed to be for a court to decide, . . . but 'parties may delegate [them] to the arbitrator' if their 'agreement does so by clear and unmistakable evidence.'" (quoting *Henry Schein*, 586 U.S. at 69) (other citations and internal quotations omitted))).  If "a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69.  The Act "mandates that the district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  Consequently, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue[,] . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68.

Courts consider motions to compel arbitration under the standard for summary judgment, as "if [they] were a request for 'summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, No. 5-cv-151 (GK), 2006 WL 1793295, at *1 (D.D.C. Jun. 28, 2006)).  That standard entitles the movant to relief "only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); FED. R. CIV. P. 56(a).

## III. DISCUSSION

Defendant contends that Trilogy agreed to arbitrate "any claim, controversy or dispute concerning questions of fact or law arising out of or relating to" the contract related to Trilogy's work on the 2016 contract with the VA ("the subcontract") and also agreed to arbitrate the threshold question of arbitrability. Def.'s Mem. at 1-2; Subcontract, Def.'s Mot., Exh. A, Art. 2.4.1, ECF No. 12-2. Trilogy counters with two points: first, that Trilogy did not agree to arbitrate the threshold issue of arbitrability and, second, that the arbitration provision does not apply because this suit does not "aris[e] out of or relat[e] to" the 2016 subcontract. Pl.'s Opp'n at 7-11. Given that the subcontract does agree to arbitrate threshold issues of arbitration, defendant's motion is GRANTED, and thus the issue of whether this dispute falls within the scope of the arbitration agreement is not further considered. *See Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

"Courts have unanimously held that incorporation into an arbitration agreement of the . . . American Arbitration Association ("AAA") rules—. . . which prescribe that an arbitrator decides gateway questions of arbitrability—evinces the requisite clear and unmistakable intent to have an arbitrator decide those questions." *HFA Specialty Acquisitions LLC v. NexGen Flight Sols., LLC*, No. 24-cv-1891 (BAH), 2024 WL 4828043, at *6 (D.D.C. Nov. 19, 2024). The D.C. Circuit in *Communications Workers* held that because the agreement at issue there "expressly incorporate[d] the AAA rules for arbitration, and those rules in turn assign threshold questions of arbitrability to the arbitrator, . . . the parties clearly and unmistakably delegated arbitrability questions to the arbitrator by incorporating the AAA rules." 6 F.4th at 1347.

The subcontract here contains an arbitration provision that delegates resolution of any "Agreement Dispute" to "binding arbitration," which "may be conducted in accordance with the

5

standard rules of the AAA Commercial Arbitration." Subcontract, Art. 2.4.3. The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R-7(a) (Rules Amended and Effective September 1, 2022), available at https://www.adr.org/sites/default/files/CommercialRules_Web_1.pdf. Therefore, the subcontract "clearly and unmistakably delegate[s] arbitrability questions to the arbitrator by incorporating the AAA rules." *Commc'n Workers*, 6 F.4th at 1347.

Trilogy raises four challenges to this conclusion. First, Trilogy argues that "the standard rules of the AAA Commercial Arbitration are not binding" because the language in the subcontract is "permissive, not mandatory." Pl.'s Opp'n at 9-10 ("[A]rbitration *may* be conducted in accordance with the standard rules of the AAA." (emphasis added) (quoting Subcontract, Art. 2.4.3)). Under D.C. Circuit law, however, such permissive language is still considered to fully incorporate the AAA rules. For example, in *Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015), the D.C. Circuit considered an arbitration agreement providing that "the investor company *may* submit a matter to arbitration 'in accordance with the Arbitration Rules of [UNICTRAL]" or in accordance with other agreed-upon arbitration rules. *Id.* at 207-08 (emphasis added); *id.*, Joint Appendix at 298, No. 13-7103 (D.C. Cir. Aug. 15, 2014). The UNICTRAL rules stated that the tribunal determined issues of arbitrability. *Chevron Corp.*, 795 F.3d at 207-08. Even though the agreement did not *mandate* that the UNICTRAL rules be applied, these rules were considered incorporated and thus the D.C. Circuit held that the parties

"consented to allow the arbitral tribunal to decide issues of arbitrability." *Id.* at 208. The same conclusion is warranted here.

Indeed, a judge in the Eastern District of Virginia determined that another contract involving SRA, containing language identical to that in the subcontract here, clearly and unmistakably delegated arbitrability to the arbitrator, even before the D.C. Circuit's decision in *Chevron Corp. See Sys. Rsch. & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, 840 F. Supp. 2d 935, 943-44 (E.D. Va. 2012). The *Systems Research* court noted that, even if the permissive language in Article 2.4.3 alone "might persuade the Court" that the parties' intent was "less than clear," the next clause, Article 2.4.4—which stated "[e]xcept as otherwise specifically provided in this provision, neither party shall institute any action or proceeding against the other party in any court or law of equity with respect to *any dispute which is or could be the subject of a claim or proceeding pursuant to this provision*" (emphasis added by court in *Systems Research*)—"evidence[d] the parties' clear and unmistakable intent" to delegate arbitrability. *Id.* That clause exists verbatim under the same numeral in the subcontract here. Subcontract, Art. 2.4.4.

Second, Trilogy also counters the delegation of arbitrability by insisting that Virginia law governs the parties' dispute, and under Virginia law, arbitrability is generally a threshold issue to be decided by this Court, such that "a contract clause giving the *option* to use the AAA rules" is not sufficiently "clear and unmistakable" to delegate arbitrability. Pl.'s Opp'n at 7-9. Defendant responds that the issue of "whether parties have 'clearly and unmistakably' agreed to arbitrate disputes about arbitrability 'seems to be one of federal law,'" but Virginia law actually counsels the same outcome. Def.'s Reply in Supp. Mot. for Arb. ("Def.'s Reply") at 3-4, ECF No. 16 (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020)).

7

Defendant is correct that whether federal or Virginia law is appropriate for that inquiry, the outcome is the same. *See KONE Inc. v. Chenega Worldwide Support, LLC*, No. 20-cv-999 (DLF), 2021 WL 827163, at *4 n.3 (D.D.C. Mar. 3, 2021) ("Virginia law dictates the same result as federal law."). Virginia law allows for the delegation of arbitrability to an arbitrator, *Brush Arbor Home Constr., LLC v. Alexander*, 297 Va. 151, 154 n.2 (2019), and under Virginia law, like federal law, "broad reference to the AAA Rules in the arbitration clause . . . evidences a 'clear and unmistakable' intent by the parties to have the arbitrator determine arbitrability," *Canaan Homes LLC v. Cummings*, No. 147-22-4, 2023 WL 5533551, at *3 (Va. Ct. App. Aug. 29, 2023). The court in *Systems Research*, in fact, applied Virginia law when determining that the SRA contract with the same language as the subcontract here clearly delegated arbitrability questions to the arbitrator. 840 F. Supp. 2d at 943-45.

Trilogy's final two arguments also fail. According to Trilogy, the arbitration clause does not apply here because the instant misappropriation of trade secret claims are not about breach of the subcontract but instead more closely relate to the parties' Nondisclosure Agreement. Pl.'s Opp'n at 10-11. Yet, the precise issue of whether the dispute is one that "arises out of or relates to" the subcontract (an "Agreement Dispute"), Subcontract, Art. 2.4.1, is the threshold question of arbitrability that the arbitrator, not this Court, must decide. *See Henry Schein*, 586 U.S. at 67-68 (describing the threshold issue as whether the agreement to arbitrate covers a particular controversy).

Lastly, Trilogy contends that the subcontract "explicitly excludes from arbitration any action that seeks injunctive relief" and, because the amended complaint—filed after defendant's motion to compel arbitration—added a request for injunctive relief, the motion should be denied. Pl.'s Opp'n at 12. This contention mischaracterizes the subcontract. Trilogy points to the phrase

8

"except for actions for injunctive relief, which may be brought at any time, any claim, controversy or dispute concerning questions of fact or law arising out of or relating to this agreement . . . shall be escalated to the executive level if" not settled within 30 days. Subcontract, Art. 2.4.1.  That clause simply excludes requests for injunctive relief from the timeline for settlement and executive review of claims, not from arbitration altogether, which is prescribed in a different subsection, in Article 2.4.3.  Moreover, Article 2.4.4 explicitly *includes* claims in equity in the scope of arbitration: "neither party shall institute any action or proceeding against the other party in any court of law or equity with respect to any dispute."  In any case, this Court has held that exclusions of injunctive relief from the scope of arbitration are not carve outs from the incorporation of the arbitration rules that delegate arbitrability to the arbitrator, and thus the arbitrator would still determine whether the dispute fell into the exclusion clause.  *HFA Specialty Acquisitions LLC*, 2024 WL 4828043, at *7-8.

An arbitrator must, therefore, determine whether plaintiff's claims are properly the subject of arbitration.

## IV.   ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to stay and compel arbitration, ECF No. 12, is **GRANTED**; it is further

**ORDERED** that the litigation be **STAYED** "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3; and it is further

**ORDERED** that the parties file a joint status report advising the Court of the status of the arbitration and its anticipated conclusion on March 3, 2025, and every 60 days thereafter, until the conclusion of the arbitration proceeding while this case remains pending.

Date:  February 4, 2025

                                                **BERYL A. HOWELL**
                                                United States District Judge